# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **Case No. 1:03CR296** |
| | ) | |
| **v.** | ) | **Hon. Leonie M. Brinkema** |
| | ) | |
| **MASOUD AHMAD KHAN,** | ) | |
| | ) | |
| **Defendant/Petitioner.** | ) | |
| | ) | |

## PETITIONER'S REPLY TO GOVERNMENT'S RESPONSE

Petitioner, Masoud Ahmad Khan, through undersigned counsel, hereby replies to the government's filing in response to the Court's Order to Show Cause (ECF No. 883). For the reasons stated in this reply and the motion to vacate under 28 U.S.C. § 2255 ("Petition"), ECF No. 849, Petitioner respectfully requests that the Court vacate his convictions under 18 U.S.C. § 924(c).

## BACKGROUND

On June 9, 2016, Petitioner filed the instant Petition, arguing that his § 924(c) convictions should be vacated because § 924(c)(3)(B)'s definition of "crime of violence" is unconstitutionally vague under *Johnson v. United States*, 135 S. Ct. 2551 (2015).[1] The Court stayed the Petition pending further guidance from the Fourth Circuit Court of Appeals and the Supreme Court. On April 19, 2018, following the Supreme Court's ruling in *Sessions v. Dimaya*, 138 S. Ct. 1204

---

[1]    *Johnson* held that a similarly worded definition of "violent felony" within the Armed Career Criminal Act ("ACCA") was unconstitutionally vague. 135 S. Ct. at 1210. The Supreme Court has held that *Johnson* is retroactive to cases on collateral review. *Welch v. United States*, 136 S. Ct. 1257, 1258 (2016).

(2018),[2] the Court issued an Order lifting the stay and requiring the government to show cause why the Petition should not be granted. On May 21, 2018, the government filed its response.

## ARGUMENT

### I.    The Petition Is Timely Under 28 U.S.C. § 2255(f)(3).

The government argues that the Petition is untimely. ECF No. 891 at 3-7. Section 2255(f)(3) allows a § 2255 motion to be filed if it, *inter alia*, (1) relies on a right newly recognized by the Supreme Court, and (2) is filed within one year of the date on which the Court initially recognized that right. *United States v. Brown*, 868 F.3d 297, 300 (4th Cir. 2017). The Petition relies on a right recognized in *Johnson*, which was decided less than one year before the Petition was filed, on June 26, 2015. The Petition is therefore timely under § 2255(f)(3). The government disagrees, asserting that § 2255(f)(3) is inapplicable because *Johnson* does not require invalidation of § 924(c)(3)(B). *See* ECF No. 891 at 5-7. As explained below, *Dimaya* demonstrates that this assertion is without merit.

*Johnson* held that part of ACCA's definition of "violent felony," specifically its so-called "residual clause," which defined such felonies as those which "involve[] conduct that presents a serious potential risk of physical injury to another," was void for vagueness under the Fifth Amendment's Due Process Clause. 135 S. Ct. at 2561-63. The Court singled out two features of ACCA's residual clause that "conspire[d] to make it unconstitutionally vague." *Id.* at 2557. First, in order to determine the risk posed by the offense, the residual clause "require[d] a court to [apply the categorical approach] and picture the kind of conduct that the crime involves 'in the ordinary

---

[2]    *Dimaya* holds that a "straightforward application" of *Johnson* requires invalidation of the definition of "crime of violence" in 18 U.S.C. § 16(b), which is identical to the definition in § 924(c)(3)(B). 138 S. Ct. at 1213.

case'" rather than looking at the "real-world" facts in the individual case at hand to determine the risk of injury.  *Id.* (citation omitted).  The clause left "grave uncertainty" about how to estimate the risk posed by a crime by asking judges "to imagine how the idealized ordinary case of the crime" occurs.  *Id.* at 2557-58.  To illustrate its point, the Court asked rhetorically, "how does one go about deciding what the 'ordinary case' of a crime involves?  A statistical analysis of the state reporter?  A survey?  Expert evidence?  Google?  Gut instinct?"  *Id.* at 2257-58 (internal citation omitted).  None of these methods offer any "reliable way" of determining how a crime is ordinarily committed.  *Id.* at 2558.  Hence, the Supreme Court found that the process of identifying the "ordinary case" creates "grave uncertainty about how to estimate the risk posed by a crime."  *Id.* at 2257.  The second problematic feature in ACCA's residual clause was that it layered an imprecise "serious potential risk" threshold on top of the requisite "ordinary case" inquiry.  The combination of "indeterminacy" created by the ordinary case inquiry and an ill-defined risk threshold resulted in "more unpredictability and arbitrariness than Due Process tolerates."  *Id.* at 2558.

The *Dimaya* Court found that § 16(b) suffers from the same two problems as ACCA's residual clause, and that a "straightforward application" of *Johnson* requires the invalidation of § 16(b), whose language is identical to § 924(c)(3)(B)'s. *Dimaya*, 138 S. Ct. at 1213. Like ACCA's residual clause, § 16(b) requires the court to identify a crime's "ordinary case" in order to measure the crime's risk, but "[n]othing in § 16(b) helps courts to perform that task." *Dimaya*, 138 S. Ct. at 1215.  The Court further found that § 16(b)'s "substantial risk" threshold is no more determinate than ACCA's "serious potential risk" threshold. *Id.* Thus, the same "[t]wo features" that "conspire[d] to make" ACCA's residual clause unconstitutionally vague—"the ordinary case

requirement and an ill-defined risk threshold"—also conspired to make § 16(b) unconstitutional. *Id.* at 1216, 1223 (citing *Johnson*, 135 S. Ct. at 2557).

Because § 924(c)(3)(B) is identical to § 16(b)—requiring the same categorical ordinary case approach and risk threshold—*Dimaya* dictates that § 924(c)(3)(B) is also unconstitutionally vague. *See In re Hubbard*, 825 F.3d 225, 230 n.3 (4th Cir. 2016) ("[T]he language of § 16(b) is identical to that in § 924(c)(3)(B), and we have previously treated precedent respecting one as controlling analysis of the other."). Indeed, in *United States v. Salas*, 889 F.3d 681 (10th Cir. 2018), the court held that "*Dimaya*'s reasoning for invalidating § 16(b) applies equally to § 924(c)(3)(B)." *Id.* at 686; *see also United States v. Cardena*, 842 F.3d 959, 996 (7th Cir. 2015) (finding § 924(c)(3)(B) unconstitutionally vague because it has "the same residual clause contained in [§16(b)]"). Moreover, several district court decisions, post-*Dimaya*, have already held that § 924(c)(3)(B) is unconstitutionally vague. *See United States v. Meza*, 2018 WL 2048899 (D. Mont. May 2, 2018); Order, *United States v. Morrison*, Case No. BLG-SPW-04-CR-126 (D. Mont. May 7, 2018); Order, *United States v. Johnson*, Case No. BLG-SPW-11-CR-140 (D. Mont. May 7, 2018); Order, *Toussaint v. United States*, Case No. 12-CR-00407-CW-1 (N.D. Cal. May 11, 2018); Order, *Evey v. United States*, Case No. SVW-97-CR-00468 (C. D. Cal. May 10, 2018).

To the extent the government attempts to rely on *United States v. Brown*, 868 F.3d 297 (4th Cir. 2017), *see* ECF No. 891 at 5, that case is inapposite, particularly in light of *Dimaya*. The admittedly "narrow holding" of *Brown* is that *Johnson* does not give relief to habeas petitioners who were sentenced as career offenders under the U.S. Sentencing Guidelines, even when they were mandatory, because the Supreme Court has not yet "recognized a right to challenge the . . . mandatory Sentencing Guidelines as void for vagueness." 868 F.3d at 299-300. After *Brown* was decided, the Supreme Court held, in *Dimaya*, that a "straightforward application" of *Johnson*

requires the invalidation of *statutory clauses*, such as 18 U.S.C. § 16(b), that suffer from the same defects as the residual clause considered in *Johnson*.  138 S. Ct. at 1213.  Because § 924(c)(3)(B) is identical to § 16(b), a "straightforward application" of *Johnson* renders it invalid.  *Brown* does not apply because Petitioner does not challenge a career offender designation, but his conviction pursuant to an unconstitutionally vague statutory clause.  Thus, the government's attempt to rely on *Brown* is unavailing.

For all of these reasons, *Johnson* effectively invalidated § 924(c)(3)(B).  Because the Petition relies on a right first recognized in *Johnson*, and because it was filed within one year of *Johnson*, it is timely pursuant to § 2255(f)(3).

## II.    There Is No Authority Supporting a "Conduct-Specific" Approach to Determinations Under § 924(c)(3)(B).

The government argues that, assuming *Johnson* requires the invalidation of § 924(c)(3)(B)'s definition of "crime of violence" under the categorical approach, the subsection need not be invalidated if it is used to analyze the actual conduct of the predicate offense, rather than the "ordinary case."  ECF No. 891 at 10.  However, the Fourth Circuit requires the use of a categorical approach, rather than a conduct-specific approach, in determining whether an offense is a crime of violence under § 924(c), and that requirement comports with Supreme Court precedent as well as the intent of Congress.

The Fourth Circuit, in accord with ten other circuits,[3] has explicitly stated in at least two cases that the categorical approach should be used to analyze whether offenses qualify as crimes

---

[3]    *See United States v. Taylor*, 848 F.3d 476, 491 (1st Cir. 2017); *Hill*, 832 F.3d at 139 (2d Cir. 2016); *United States v. Jennings*, 195 F.3d 795, 797-98 (5th Cir. 1999); *United States v. Rafidi*, 829 F.3d 437, 444-45 (6th Cir. 2016); *Taylor,* 814 F.3d 340 (6th Cir. 2016); *United States v. Williams*, 864 F.3d 826, 828 (7th Cir. 2017); *Prickett*, 839 F.3d at 698; *United States v. Amparo*,

of violence under § 924(c), whether under its force clause, § 924(c)(3)(A), or under its residual clause, § 924(c)(3)(B). *See United States v. Fuertes*, 805 F.3d 485, 498 (4th Cir. 2015) ("In determining whether an offense qualifies as a 'crime of violence' under either [the § 924(c) force clause or residual clause]" the court must "employ the 'categorical approach' or the 'modified categorical approach.'"); *United States v. McNeal*, 818 F.3d 141, 152 (4th Cir. 2016) ("[i]n determining whether an offense is a crime of violence under either clause, we utilize the categorical approach"). Based on *Fuertes* and *McNeal*, this Court should find that the categorical approach applies to § 924(c)(3)(B).

The government suggests that this Court should find the categorical approach does not apply to § 924(c)(3)(B), despite binding precedent, because the categorical approach is only necessary when analyzing prior convictions, not contemporaneous offenses. ECF No. 891 at 21. This argument ignores Fourth Circuit precedent holding that § 16(b)'s language—specifically its requirement that an offense "by its nature" involve a substantial risk of physical force—requires using the categorical approach to analyze whether a contemporaneous offense qualifies as a "crime of violence." *United States v. Aragon*, 983 F.2d 1306, 1313 (4th Cir. 1993) (reaching this

---

68 F.3d 1222, 1225 (9th Cir. 1995); *Salas,* 2018 WL 2074547, at *3 (10th Cir. 2018); *United States v. Serafin*, 562 F.3d 1105, 1107-08 (10th Cir. 2009); *United States v. McGuire*, 706 F.3d 1333, 1336-37 (11th Cir. 2013); *United States v. Kennedy*, 133 F.3d 53, 56-57 (D.C. Cir. 1998).

Adhering to the above-recited decisions, nationwide pattern jury instructions for § 924(c) uniformly call for the categorical approach to apply to the "crime of violence" determination. They do so by instructing that an offense's status as a "crime of violence" is a purely legal issue for courts to determine pretrial; therefore, at trial, the jury must be instructed that the predicate offense is, as a matter of law, a "crime of violence." *See, e.g.,* First Cir. Pattern Jury Instr. 4.07; Third Cir. Model Crim. Jury Instr. 6.18.924A; Fifth Cir. Pattern Crim. Jury. Instr. 2.48; Sixth Cir. Pattern Crim. Jury Instr. 12.92; Seventh Cir. Pattern Crim. Jury Instr. 18 U.S.C. § 924(c)(1)(A); Eighth Cir. Model Crim. Jury Instr. 6.18.924C; Ninth Cir. Model Crim. Jury. Instr. 8.71; Tenth Cir. Pattern Crim. Jury. Instr. 2.45; Eleventh Cir. Pattern Crim. Jury Instr. 35.2.

conclusion in the context of the Travel Act, which criminalizes interstate travel with the contemporaneous intent to commit a crime of violence). *Aragon* shows that the temporal aspect of the offense being analyzed—whether it is a prior one or contemporaneous one—is irrelevant to the question of whether the categorical approach is required. Instead, what matters is the language of the applicable statute. Because the language of § 16(b) is identical to the language § 924(c)(3)(B), and because *Aragon* holds that the former section requires using the categorical approach, it necessarily follows that the latter section also requires using the categorical approach. Thus, the government's argument that the categorical approach is not required under § 924(c)(3)(B) is unavailing.[4]

Applying the categorical approach to § 924(c)(3)(B) does not, as the government claims, "raise[] serious constitutional questions" in light of *Dimaya*. ECF No. 891 at 15. On the contrary, *Fuertes*, *McNeal*, and *Aragon* comport with the Supreme Court's decisions in *Dimaya*, *Leocal v.*

---

[4]    Additionally, the Fourth Circuit, as well as other circuit courts, have held that the categorical approach applies to multiple other statutes that, like § 924(c)(3)(B) and the Travel Act, have a contemporaneous "crime of violence" definition (defined by the same residual clause) for the *instant* offense. *See United States v. Diaz*, 865 F.3d 168 (4th Cir. 2017) (applying categorical approach to "crime of violence" finding in Mandatory Victims Restitution Act); *United States v. Ingle*, 454 F.3d 1082, 1084-85 (10th Cir. 2006) (applying categorical approach to "crime of violence" finding in the Bail Reform Act); *United States v. Singleton*, 182 F.3d 7, 10 (D.C. Cir. 1999) (same – collecting cases).

Likewise, the Fourth Circuit has also held that the categorical approach applies to "crime of violence" determinations under the sentencing guidelines for *instant offenses* of conviction due to the "plain language" of the relevant guideline. *See United States v. Johnson*, 953 F.2d 110, 114 (4th Cir. 1991) (noting the "substantial intuitive appeal" of applying a circumstance-specific approach to instant offenses but nonetheless concluding that the approach "must . . . be rejected" under "the plain language" of revised guideline commentary); *United States v. Martin*, 215 F.3d 470, 474 (4th Cir. 2000) (applying categorical approach to instant conviction "no matter how clear it may be from the record" that the defendant committed a "crime of violence").

All of this precedent further makes evident that the categorical approach is not merely limited to "crime of violence" findings with respect to *prior convictions*.

*Ashcroft*, 543 U.S. 1 (2004), and *Taylor v. United States*, 495 U.S. 575 (1990). To start, in *Taylor*, the Supreme Court clarified that Congress always intended that the categorical approach apply to § 924(c)(3). The Court did so while surveying the legislative history of ACCA. *Id.* at 581-88. The Court noted that the initial drafts of the then-current version of ACCA – added in 1986 – included a proposal to define "violent felony" under ACCA with the same "crime of violence" language that had already been added to § 924(c) a few months earlier (language that remains in § 924(c) today). *Id.* at 583. Thus, the first bill proposed in the Senate would have defined an ACCA "violent felony" to include any offense "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* Referring to this language, the Court concluded that Congress always intended the categorical approach to apply: "Each of the proposed versions of the 1986 amendment carried forward *this categorical approach*, extending the range of predicate offenses to all crimes having certain common characteristics—the use or threatened use of force, *or the risk that force would be used*—regardless of how they were labeled by state law." *Id.* at 589 (emphasis added).

In *Leocal*, 543 U.S. at 7, the Supreme Court reinforced the point. In that case, the Court held that § 16(b)'s "language [specifically the words 'by its nature'] requires us to look to the elements and nature of the offense of conviction, rather than to the particular facts relating to petitioner's crime." *Id.* It follows that § 924(c)(3)(B), which has the same language, also requires the categorical approach. Even though *Leocal* involved a prior conviction, that makes no difference here because its holding did not turn on any reasoning unique to prior convictions.

Rather, *Leocal* relied solely on one reason for its categorical approach holding:  the plain language of § 16(b) – nothing more.  *Id.*[5]

In *Dimaya*, 138 S. Ct. at 1217, the Court again held that "§16(b)'s text . . . . demands a categorical approach":

> Simple references to a "conviction," "felony," or "offense," we have stated are "read naturally" to denote "the crime as *generally* committed."  And the words by its nature in § 16(b) make that meaning all the clearer. The statute, recall, directs courts to consider whether an offense, *by its nature*, poses the requisite risk of force.  An offense's "nature" means its "normal and characteristic quality."  So § 16(b) tells courts to figure out what an offense normally – or, as we have repeatedly said, "ordinarily" – entails, not what happened to occur on one occasion.

*Id.* at 1217-18 (citations omitted).

The *Dimaya* Court further clarified that "the same conclusion follows if we pay attention to the language that is *missing* from § 16(b).  As we have observed in the ACCA context, the absence of terms alluding to a crime's circumstances, or its commission, makes a fact-based interpretation an uncomfortable fit."  *Id.* at 1218.  The Court explained that "[i]f Congress had wanted judges to look into a felon's actual conduct, it presumably would have said so; other statutes, in other contexts, speak in just that way."  *Id.*  (citation and internal quotation marks omitted).[6]  Thus, the Court concluded that "[t]he upshot of all this textual evidence is that § 16's

---

[5]    See also *James v. United States*, 550 U.S. 192, 208 (2007) (indicating that the words "by its nature" require the application of the categorical ordinary case approach).

[6]    As Justice Kagan explained in *Dimaya*, "[f]or example, in *United States v. Hayes*, 555 U.S. 415 (2009), [the Supreme Court] held that a firearm statute referring to former crimes as '*committed by*' specified persons requires courts to consider underlying facts. *Id.* at 421.  And in *Nijawhan v. Holder*, 557 U.S. 29 (2009), the Court similarly adopted a non-categorical interpretation of one of the aggravated felonies listed in the INA because of the phrase, appended to the named offense, 'in which the loss to the victim or victims exceeds $10,000.' *Id.* at 34, 36 (emphasis deleted)."  *Dimaya*, 138 S. Ct. at 1218 n.5.

residual clause—like the ACCA's, except, still more plainly—has no 'plausible' fact-based reading." *Id.* (quoting *Johnson,* 135 S. Ct. at 2562).

Importantly, the Court reached this holding even though *Dimaya* involved a civil immigration removal proceeding that did not implicate "Sixth Amendment concerns that would arise from sentencing courts' making findings of fact that properly belong to juries." *Dimaya*, 138 S. Ct. at 1217 (citation omitted). The Court reasoned that "we must interpret the [§ 16(b)] statute consistently where we encounter its application in a criminal or noncriminal context." *Id.* (quoting *Leocal*, 543 U.S. at 12, n.8). In other words, the Court made clear that the words "by its nature" (when they appear in the exact form as in § 16(b)'s text) are not chameleon-like that change from one context to another. Rather, they must be interpreted the same, wherever they appear. That means they must also be interpreted the same in § 924(c)(3)(B). Because the words "by its nature" demand the categorical approach in § 16(b), they also demand the categorical approach in § 924(c)(3)(B).[7]

---

[7]    To be clear, the majority of the judges (including Chief Justice Roberts) in *Dimaya* agreed that §16(b)'s text requires the categorical approach. *Id.* at 1216 ("[T]he Government, joined by THE CHIEF JUSTICE, accepts that § 16(b), as long interpreted, demands a categorical approach."). Moreover, Chief Justice Roberts even commented that because " § 16 is replicated in the definition of 'crime of violence' applicable to § 924(c) . . . . the Court's holding calls into question § 924(c) convictions." *Id.* at 1241 (Roberts, J., dissenting).

Thus, it goes without saying that Justice's Thomas's dissent urging for a factual approach, and Justice Gorsuch's concurrence exploring the possibility that something other than the ordinary case approach may apply to § 16(b) (even though precedent "seemingly requires [the categorical approach]") are of no moment. *See Id.* at 1232-33 (Gorsuch, J., concurring); *Id.* at 122-59 (Thomas, J., dissenting). The minority view of these justices certainly does nothing at all to upset —let alone overrule—the Fourth Circuit's binding decisions in *Fuertes* and *McNeal*, and the Supreme Court's decisions in *Leocal*, *Taylor*, and *Dimaya* itself, which all demand the categorical approach for § 924(c)(3)(B). Therefore, this Court is still bound by this precedent.

Moreover, when addressing issues of statutory interpretation, "the claim to adhere to case law is generally powerful once a decision has settled statutory meaning." *Shepard v. United States*, 544 U.S. 13, 23 (2005). "In this instance, time has enhanced even the usual precedential force." *Id.* "[N]early [28 years] having passed since [*Taylor*] came down[,]" and since *Taylor*, the Supreme Court, the Fourth Circuit, as well as other courts have said over and over again that the categorical approach applies to the twin residual clauses of §§ 16(b) and 924(c)(3)(B). Congress, which is surely cognizant of the Federal Courts' longstanding interpretation, has done nothing "to modify the statute as subject to our understanding." *Id.*[8] This inaction makes plain that Congress intended the categorical approach to apply to the § 924(c)(3)(B) "crime of violence" definition.[9]

---

[8]    Congress has done nothing to touch the "crime of violence" definition in § 924(c), even though it has amended the statute for unrelated reasons over the years. *See* Pub. L. No. 105-386, § 1, 112 Stat. 3469 (1998) (criminalizing the possession of a firearm in furtherance of a "crime of violence"); Pub. L. No. 109-92, § 6, 119 Stat. 2095 (2005) (amending § 924(c) and adding subsection (c)(5) to create new mandatory penalties for the use of armor piercing ammunition). "In adopting the language used in the earlier act, Congress 'must be considered to have adopted also the construction given by this Court to such language, and made it a part of the enactment.'" *Shapiro v. United States,* 335 U.S. 1, 16 (1948).

[9]    Because Congress's intent to apply the categorical approach to § 924(c) is abundantly clear from the plain language of the text, the doctrine of constitutional avoidance is of no help to the government. The canon of constitutional avoidance is "a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises constitutional doubts." *Hawaii v. Office of Hawaiian Affairs,* 556 U.S. 163, 176 (2009). This canon "comes into play only when after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction." *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). "In the absence of more than one plausible construction, the canon simply has no application." *Id.* As explained by Justice Kagan in *Dimaya*, § 16(b), and in turn, § 924(c)(3)(B), has no "'plausible' fact-based reading." 138 S. Ct. at 1218 (quoting *Johnson,* 135 S. Ct. at 2562). Therefore, a majority of the Justices in *Dimaya* majority rejected Justice Thomas's constitutional avoidance argument for abandoning the categorical approach. *Id.* at 1216-18. This Court must do the same here. *Id.*

III.    **Petitioner Has Not Waived His Right to Challenge the Constitutionality of §
924(c)(3)(B).**

The government argues that Petitioner has procedurally defaulted and therefore waived any right to challenge the constitutionality of § 924(c)(3)(B).  ECF No. 891 at 3, 10.  However, a jurisdictional defect may not be defaulted.  Furthermore, assuming *arguendo* Petitioner has procedurally defaulted, such default should be excused because Petitioner has established sufficient cause and prejudice, and because he is actually innocent of § 924(c).

**A.  The Defect Is Jurisdictional.**

The unconstitutionality of a statute of conviction or the failure of an indictment to state an offense is a jurisdictional defect that cannot be defaulted, so Petitioner has not procedurally defaulted his § 924(c) claim.  A jurisdictional defect is one that "strip[s] the court of its power to act and ma[kes] its judgment void." *McCoy v. United States*, 266 F.3d 1245, 1249 (11th Cir. 2001) (quoting *Escareno v. Carl Nolte Sohne GmbH & Co.*, 77 F.3d 407, 412 (11th Cir. 1996)).  "Because parties cannot by acquiescence or agreement confer jurisdiction on a federal court, a jurisdictional defect cannot be waived or procedurally defaulted[.]" *Id.*

"Claims that the applicable statute is unconstitutional or that the indictment fails to state an offense are jurisdictional claims[.]"  *United States v. Montilla*, 870 F.2d 549, 552 (9th Cir. 1989), *amended*, 907 F.2d 115 (9th Cir. 1990) (internal quotation marks omitted).  "Here, [Petitioner] argues that he cannot be convicted under § 924(c)(3)(B) because that provision is unconstitutionally vague[,]" and therefore he has not defaulted "his claim that this statute of conviction is unconstitutional."  *United States v. St. Hubert*, 883 F.3d 1319, 1324 (11th Cir. 2018) (holding that unconditional guilty plea did not waive such a claim).

-12-

Moreover, in this case, the predicate offense was not, in fact, a crime of violence, and therefore Petitioner's indictment failed to state a § 924(c) offense. "[W]hen an indictment 'affirmatively allege[s] a specific course of conduct that is outside the reach' of the statute of conviction—or stated another way, 'alleges only a non-offense'—the district court has no jurisdiction to accept the guilty plea [or guilty verdict]." *Id.* at 1326 (quoting *United States v. Peter*, 310 F.3d 709, 715 (11th Cir. 2002)). In such a case, the defendant is guilty of a "non-offense that the government did not have the power to prosecute[.]" *Id.* at 1324. In this case, "the error asserted by [Petitioner] is that 'the indictment consisted of only specific conduct'—carrying, using, and brandishing a firearm [in relation to a "crime of violence"]—that . . . is 'as a matter of law . . . outside the sweep of the charging statute.'" *Id.* at 1326 (quoting *Peter*, 310 F.3d at 714). "Said another way, because 'the Government *affirmatively* alleges a specific course of conduct that [] is outside the reach of [§ 924(c)], the Government's proof of th[at] alleged conduct, no matter how overwhelming, would have brought it no closer to showing the crime charged than would have no proof at all.'" *Id.* (quoting *Peter*, 310 F.3d at 715 (emphasis added)).

Therefore, Petitioner's "challenge to his § 924(c) conviction[] on this ground is jurisdictional," *id.* at 1327, and it cannot be procedurally defaulted. Instead, "[a] judgment tainted by a jurisdictional defect . . . must be reversed." *United States v. DiFalco*, 837 F.3d 1207, 1215 (11th Cir. 2016) (citing *McCoy*, 266 F.3d at 1249).

### B.  Petitioner Has Shown Cause and Prejudice.

Even if this Court finds that Petitioner procedurally defaulted his challenge to his § 924(c) conviction, a procedurally defaulted claim may nonetheless be raised in a habeas petition where

the petitioner shows cause and actual prejudice.  *Bousley v. United States*, 523 U.S. 614, 622 (1998).

Petitioner has cause for any procedural default.  The Supreme Court has explained that "the cause requirement may be satisfied under certain circumstances when a procedural failure is not attributable to an intentional decision by counsel made in pursuit of his client's interests," such as when counsel fails "to raise a constitutional issue reasonably unknown to him."  *Reed v. Ross*, 468 U.S. 1, 14 (1984).  While "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time,'" *Bousley*, 523 U.S. at 623, cause for default exists "where a constitutional claim is so novel that its legal basis [was] not reasonably available to counsel" during previous proceedings.  *Reed*, 468 U.S. at 16.

Where, as here, the Supreme Court "has articulated a constitutional principle that ha[d] not been previously recognized but which is held to have retroactive application," by either (1) overruling one of its precedents or (2) "overturn[ing] a longstanding and widespread practice to which [the] Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved," there is no reasonable basis upon which an attorney could have previously brought the claim.  *Id*. at 17 (citation omitted).  Thus, the claim is "sufficiently novel" and cause exists.  *Id.*  Alternatively, cause may exist where the Supreme Court "disapprove[s] a practice th[e] Court arguably has sanctioned in prior cases," depending "on how direct th[e] Court's sanction of the prevailing practice had been, how well entrenched the practice was in the relevant jurisdiction at the time of defense counsel's failure to challenge it, and how strong the available support is from sources opposing the prevailing practice."  *Id*. at 17-18.

The argument that residual clauses like the ones in 18 U.S.C. § 924(e)(1) (ACCA), 18 U.S.C. § 16(b), or 18 U.S.C. § 924(c) are unconstitutional was novel and unavailable to counsel

before *Johnson*.  In all three cases in which the Supreme Court addressed the constitutionality of the residual clause in ACCA, it had not been raised by the parties but, instead, *sua sponte* by the Court.  *See United States v. Sabetta*, 221 F. Supp. 3d 210, 225-26 (D.R.I. 2016) (Smith, C.J., and McConnell, Jr., J.) (addressing *Johnson* motions filed in seven cases and explaining the history of the residual clause issue).  In both *James v. United States*, 550 U.S. 192 (2007), and *Sykes v. United States*, 564 U.S. 1 (2011), the issue was raised only by Justice Scalia in dissent.  *See James*, 550 U.S. at 210 n.6 ("[W]e are not persuaded by Justice Scalia's suggestion—which was not pressed by James or his *amici*—that the residual provision is unconstitutionally vague."); *Sykes*, 564 U.S. at 28 (Scalia, J., dissenting) ("We should admit that ACCA's residual provision is a drafting failure and declare it void for vagueness."); *see also Johnson*, 135 S. Ct. at 2562-63 ("*James* and *Sykes* opined about vagueness without full briefing or argument on that issue . . . .").  Not even in *Johnson* was the issue raised by the parties:  rather, following oral argument, the Court ordered the parties to brief the issue and then held another oral argument.  *Johnson v. United States*, 135 S. Ct. 939, 939 (2015); *Johnson*, 135 S. Ct. at 2556.  This history shows Petitioner did not have available any challenge to his conviction based on the unconstitutionality of the residual clause, and that such challenge was novel, before *Johnson*.

Additionally, every appellate court to consider the constitutionality of the residual clause in ACCA, which is worded similarly to the residual clause in § 924(c), had held it was not unconstitutionally vague.  *See United States v. Jones*, 689 F.3d 696, 704-05 (7th Cir. 2012); *Harrington v. United States*, 689 F.3d 124, 137 (2d Cir. 2012); *United States v. Hart*, 674 F.3d 33, 41 n.3 (1st Cir. 2012); *United States v. Hudson*, 673 F.3d 263, 268-69 (4th Cir. 2012); *United States v. Gore*, 636 F.2d 728, 742 (5th Cir. 2011); *United States v. Martinez*, 771 F.3d 672, 678 (9th Cir. 2014); *United States v. Phillips*, 752 F.3d 1047, 1051-52 (6th Cir. 2014); *United States*

*v. Brown*, 734 F.3d 824, 827 (8th Cir. 2013); *United States v. Blair*, 734 F.3d 218, 223 n.5 (3d Cir. 2013); *United States v. Orona*, 724 F.3d 1297, 1310-11 (10th Cir. 2013); *United States v. Weeks*, 711 F.3d 1255, 1262 (11th Cir. 2013). No circuit appears to have addressed the constitutionality of § 924(c)'s residual clause before *Johnson*. Therefore, a unanimous body of lower court authority *had* expressly approved the similarly worded residual clause at that time.

As one district court reasoned:

> [T]he distinction between novelty and futility is plain here: the Government does not point to, and the Court is not aware of, a single case that had held the ACCA's residual clause unconstitutionally vague before *Johnson*. That is, the claim was not viable in any jurisdiction in the nation. Accordingly, there was "almost certainly . . . no reasonable basis upon which [defense counsel] previously could have urged" the lower court to adopt the Supreme Court's holding in *Johnson*.

*Sabetta*, 221 F. Supp. 3d at 226 (quoting *Reed*, 468 U.S. at 17). In *Sabetta*, the court thus found "that the issue of whether the ACCA's residual clause was unconstitutionally vague was sufficiently novel to excuse each of the Defendants' failure to raise it at sentencing or on direct review." *Id.* at 227; *see also United States v. Redrick*, 841 F.3d 478, 480 (D.C. Cir. 2016) ("At the time of the plea agreement, it is fair to say that no one—the government, the judge, or the appellant—could reasonably have anticipated *Johnson*.").

Should this Court find to the contrary—that there was, in fact, a reasonable basis upon which an attorney previously could have brought the claim in this motion—then trial counsel's failure to bring this claim in Petitioner's case was unreasonable and must constitute ineffective assistance of counsel. The procedural default rule does not apply to ineffective assistance of counsel claims. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *see also McCleskey v. Zant*, 499 U.S. 467, 494 (1991) ("[C]onstitutionally ineffective assistance of counsel is cause.") (citation and quotation marks omitted)).

To establish actual prejudice under the "cause and prejudice" test, a petitioner must show that there is a reasonable probability that, without the error, the result of the proceedings would have been different. *Strickler v. Greene*, 527 U.S. 263, 289 (1999). Petitioner makes that showing because, without the residual clause, he would not have been convicted of the § 924(c) offense. Moreover, he was sentenced to life in prison for his § 924(c) offense. Thus, Petitioner was clearly prejudiced by the substantial increase to his prison sentence. *See, e.g., Glover v. United States*, 531 U.S. 198, 200 (2001) (finding prejudice from ineffective assistance of counsel where his sentence was increased by anywhere between 6 and 21 months because "any amount of actual jail time has Sixth Amendment significance").

### C. Petitioner Is Actually Innocent.

Even absent a showing of "cause and prejudice," procedural default is excused where there has been a "fundamental miscarriage of justice," as demonstrated by "a convincing showing of actual innocence." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928, 1931 (2013); *see id.* at 1928 (holding that "actual innocence, if proved, serves as a gateway through which a [habeas] petitioner may pass whether the impediment is a procedural bar" or the "expiration of the statute of limitations"). "'This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons.'" *Id.* at 1931-32 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

To establish actual innocence of a count of conviction, the petitioner must demonstrate that "in light of all the evidence," "it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327-328 (1995)

(internal quotation marks omitted)).  The courts of appeals have uniformly held that this showing is satisfied when an intervening change in the law establishes that a petitioner has been "convicted for conduct not prohibited by law."  *Alaimalo v. United States*, 645 F.3d 1042, 1047 (9th Cir. 2011); *see also United States v. Adams,* 814 F.3d 178, 183 (4th Cir. 2016) (petitioner was actually innocent of his felon-in-possession conviction because intervening Fourth Circuit precedent established that he was no longer a felon).[10]

Although "actual innocence" means "factual innocence, not mere legal insufficiency," *Bousley*, 523 U.S. at 623, the Fourth Circuit in *Adams* demonstrates that Petitioner is actually innocent of the § 924(c) offense.  In that case, Adams argued that in light of intervening Fourth Circuit precedent, he was actually innocent of his conviction for being a felon in possession in violation of 18 U.S.C. § 922(g).  *Adams*, 814 F.3d at 183.  Specifically, he claimed that after *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011)—which redefined the meaning of "felony" under § 922(g)—none of his prior convictions could qualify as "felonies."  *Id.*  In turn, he asserted that the "felon" element of § 922(g) could no longer be satisfied, and hence, he was actually innocent. *Id.*  Nonetheless, the government, citing *Bousley*, contended then, just as it does now, that "although Adams may no longer be legally convicted of a violation of § 922(g) after *Simmons*, he remains, [] somehow still factually guilty."  *Id.*  However, the Fourth Circuit flatly rejected the government's argument upon concluding that "Adams, has indeed, shown 'factual innocence' as contemplated by *Bousley*."  *Id.* at 183.  The Court explained that Adams is factually innocent "because he has shown that it impossible for the government to prove one of the required elements

---

[10]     These decisions are consistent with the Supreme Court's decision in *Davis v. United States,* 417 U.S. 333 (1974), which held that when intervening precedent renders conduct that once was criminal no longer criminal, it "inherently results in a complete miscarriage of justice." *Id.* at 346-47.

of a § 922(g)(1) charge—that the defendant was a convicted felon at the time of the offense. This is so because [in light of *Simmons*] Adams was 'in fact' not a felon." *Id.*

Likewise, Petitioner is factually innocent of the § 924(c) offense for which he was convicted. In light of *Johnson* and *Dimaya*, there are no facts under which he could have been convicted for the charged § 924(c) offense. Under the categorical approach, the offense of conspiracy, in fact, never qualifies as a "crime of violence." Therefore, "it is impossible for the government to prove one of the required elements" of § 924(c) —the "crime of violence" element. *Adams,* 814 F.3d at 183; *see also Duhart v. United States,* 2016 WL 4720424, at *4 (S. D. Fla. Sept. 9, 2016) (finding actual innocence where petitioner's "§ 924(c) conviction relies on the fact that he was convicted of a predicate 'crime of violence' when he was actually not").

Because Petitioner was convicted of conduct that is no longer criminal, he is actually innocent of the § 924(c) offense for which he was convicted. Therefore, any procedural default should be excused to prevent a miscarriage of justice.

## IV. The Predicate Offenses Underlying Petitioner's § 924(c) Conviction Do Not Constitute Crimes of Violence Under § 924(c)(3)(A).

The government argues that Petitioner's predicate offenses underlying his § 924(c) are crimes of violence under § 924(c)(3)(A), and thus that Petitioner is not entitled to relief even though § 924(c)(3)(B) is void.[11] ECF No. 891 at 13-15. The Court should reject this argument.

---

[11]    The offenses underlying Mr. Khan's convictions under 18 U.S.C. § 924(c) are conspiracy, in violation of 18 U.S.C. § 371; seditious conspiracy, in violation of 18 U.S.C. § 2384; conspiracy to provide material support to al-Qaeda, in violation of 18 U.S.C. § 2339B; conspiracy to contribute services to the Taliban, in violation of 50 U.S.C. § 1705; and conspiracy to contribute material support to Lashkar-e-Taiba, in violation of 18 U.S.C. § 2339A. *See* ECF No. 849 at 2.

In its supplemental brief, the government offers nearly no argument for why Mr. Khan's predicate offenses should be considered crimes of violence under § 924(c)(3)(A). ECF No. 891 at 13-15. The government cites only one case, *United States v. DiSomma*, 951 F.2d 494 (2d Cir. 1991), to support its argument that Petitioner's predicate offenses are categorically crimes of violence under § 924(c)(3)(A), and that is an out-of-circuit cases from 1991 concerning conspiracy to commit *robbery*. ECF No. 891 at 14; *see also Wiggan v. United States*, No. 3:15-cv-447 (SRU), 2016 WL 4179838, at *15 n.14 (D. Conn. Aug. 5, 2016) (noting that "*DiSomma* was decided before the categorical approach was clearly defined"). *DiSomma* has no persuasive, let alone binding, authority, and thus the government has effectively conceded that Petitioner's underlying predicate offenses are not crimes of violence. However, out of an abundance of caution, Petitioner will explain why none of his five predicate offenses constitutes a categorical crime of violence.

## A. Conspiracy

Section 371 of Title 18 proscribes "conspir[ing] to commit any offense against the United States[.]" While the statute requires that an overt act be taken in furtherance of the conspiracy, that is not enough to bring § 371—no matter the object of the conspiracy—within the force clause. Overt acts in furtherance of a conspiracy under § 371 can be as innocent as a phone call. *E.g.*, *United States v. Thompson*, 518 F.3d 832, 858 (10th Cir. 2008). Moreover, even if the object of a § 371 conspiracy is itself a crime of violence under § 924(c)(3)(A)'s force clause, the conspiracy itself does not fall under the force clause. *See, e.g.*, *United States v. Brown*, 200 F.3d 700, 706 (10th Cir. 1999) (conspiracy to commit carjacking is a crime of violence under § 924(c)'s residual clause). Because conspiracies—even if entered into for the purpose of committing a future crime of violence—do not involve the use of violent force, they are not crimes of violence.

-20-

### B. Seditious Conspiracy

Nor is seditious conspiracy. A conspiracy is just an agreement between two or more people to do something together. When "the text of" a statute "does not expressly make the commission of an overt act an element of the conspiracy offense, the Government need not prove an overt act to obtain a conviction." *Whitfield v. United States*, 543 U.S. 209, 214 (2005). Seditious conspiracy, 18 U.S.C. § 2384 (formerly 18 U.S.C. § 6), does not include an overt act element. As has been recognized for over 150 years, the very point of § 2384's enactment was that, up until the point of the statute becoming law, "the criminal law . . . waited until treason or resistance ha[d] been consummated by an overt act." *In re Charge to Grand Jury-Treason*, 30 F. Cas. 1049, 1051 (C.C.D. Mass. 1861). *See also, e.g.*, *Anderson v. United States*, 273 F. 20, 23 (8th Cir. 1921). Because seditious conspiracy requires nothing more than an agreement between two or more people to engage in sedition sometime in the future, it does not categorically involve the active "use, attempted use, or threatened use of physical force against the person or property of another[.]" 18 U.S.C. § 924(c)(3)(A). *Cf. United States v. Edmundson*, 153 F. Supp.3d 857, 861 (D. Md. 2015) (finding that because Hobbs Act conspiracy, 18 U.S.C. § 1951, does not "require the defendant to commit an overt act in furtherance of the conspiracy[,]" it is not a crime of violence under § 924(c)(3)(A).).

### C. Conspiracy To Provide Material Support

Like § 2384, conspiracy to provide material support under § 2339B "does not explicitly require . . . an overt act[.]" *United States v. Jama*, 217 F. Supp.3d 882, 894 (E.D. Va. 2016) (Trenga, J.). Because § 2339B does not have an overt-act element, the government does not need to prove anything more than the existence of an agreement between people to convict a defendant

of conspiring to violate it. *Whitfield v. United States*, 543 U.S. 209, 214 (2005). Mere agreements do not fall under the force clause. *See, e.g.*, *United States v. Melvin*, 621 Fed. Appx. 226 (4th Cir. 2015) (vacating ACCA-enhanced sentence predicated on state conspiracy offense); *Edmundson*, 153 F. Supp.3d at 861.

Even if the material support statutes required the government to prove that an overt act was taken in furtherance of the conspiracy, that still would not bring § 2339B under § 924(c)(3)(A)'s force clause. That is because the conduct required to satisfy the elements of the material support statutes does not come close to approaching the use of force that is required by *Johnson v. United States*, 559 U.S. 133, 140 (2010) (*Johnson I*). Indeed, even pre-*Johnson I*, a judge in this district found that a substantive violation of the statute—let alone mere conspiracy—fell under the residual clause. *See United States v. Lindh*, 212 F. Supp.2d 541, 579 (E.D. Va. 2002) (Ellis, J.) ("Simply put, when one provides material support or resources to a terrorist organization, there is a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."). *See also id.* at 580; *United States v. Goba*, 240 F. Supp.2d 242, 251 (W.D. N.Y. 2003) (finding that § 2339B was a crime of violence under § 16(b), as incorporated into the Bail Reform Act, 18 U.S.C. § 3156).

Because conspiracy to provide material support does not require an overt act, and a substantive violation of § 2339B does not fall under the force clause, conspiracy to provide material support is not a crime of violence.

### D.  Conspiracy To Contribute Services To The Taliban

Even though 50 U.S.C. § 1705 uses 18 U.S.C. § 371's definition of conspiracy (which includes an overt-act element), § 1705 is not a crime of violence because even an overt act in

furtherance of a conspiracy to contribute services to the Taliban does not categorically involve the "use, attempted use, or threatened use of physical force against the person or property of another[.]" 18 U.S.C. § 924(c)(3)(A). The statute proscribes activity like "us[ing] a website to urge [people] to donate money, goods, and services to Taliban-sponsored programs in Afghanistan[,]" as well as "provid[ing] funds for the creation of a computer lab for the Taliban in Afghanistan." *United States v. Mostafa*, 965 F. Supp.2d 451, 463 (S.D.N.Y. 2013). *See also United States v. Abu Ali*, 528 F.3d 210, 237-38 (4th Cir. 2008) (en banc).

Even if one takes a substantial step towards, for example, providing money "for the creation of a computer lab," *Mostafa*, 965 F. Supp.2d at 463, violent force, as § 924(c)(3)(A) contemplates the phrase, is still not present. Thus, because even a substantive violation of § 1705 does not necessarily involve the "use, attempted use, or threatened use of physical force against the person or property of another," 18 U.S.C. § 924(c)(3)(A), a conspiracy—even if it involves an overt act—cannot categorically be a crime of violence.

### E.  Conspiracy To Contribute Material Support To Lashkar-e-Taiba

Like conspiring to violate its companion statute, § 2339B, conspiracy to violate § 2339A is not a crime of violence under § 924(c)'s force clause.

To convict a defendant of a substantive violation of § 2339A, the government has to prove: (1) that the defendant provided, attempted to provide or conspired to provide material support (or concealed or disguised the nature, location, source, or ownership of material support or resources); and (2) the defendant did so knowing or intending that the material support or resources would be used in preparation for or carrying out one of the enumerated offenses. *See United States v. Hassan*, 742 F.3d 104, 140 (4th Cir. 2014); *United States v. Khan*, 309 F. Supp. 2d 789, 821 (E.D. Va.

2004).  Under § 2339A, support and resources include, for example, "instruction of resolving disputes through international law . . . ." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 22 (2010).  Thus, because § 2339A encompasses mere speech, it cannot be a categorical crime of violence under § 924(c)'s force clause, regardless of the intended result of the material support.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court grant the Petition.

Respectfully Submitted,

MASOUD AHMAD KHAN
By Counsel

  /s/ Rahul Sharma
Geremy C. Kamens (Va. Bar No. 41596)
Rahul Sharma (Va. Bar No. 92828)
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, VA 22314
(703) 600-0800
(703) 600-0880 (fax)
Geremy_Kamens@fd.org
Rahul_Sharma@fd.org

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 4, 2018, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to all counsel of record.

Pursuant to the Electronic Case Filing Policies and Procedures, a courtesy copy of the foregoing pleading will be delivered to chambers within one business day of the electronic filing.

/s/

Rahul Sharma (Va. Bar No. 92828)
Assistant Federal Public Defender
1650 King Street, Suite 500
Alexandria, VA 22314
(703) 600-0825
(703) 600-0880 (fax)
Rahul_Sharma@fd.org